**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RONALD C. JONES,                    :
                                    :     Civil Action No. 09-2506 (GEB)
            Plaintiff,              :
                                    :
            v.                      :     **OPINION**
                                    :
LARRY GLOVER, et al.,               :
                                    :
            Defendants.             :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Ronald C. Jones
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

BROWN, JR., Chief Judge

      Plaintiff Ronald Jones, a prisoner confined at New Jersey

State Prison in Trenton, New Jersey, seeks to bring this action

<u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging

violations of his constitutional rights.  Based on his affidavit

of indigence and the absence of three qualifying dismissals

within 28 U.S.C. §1915(g), the Court will grant Plaintiff's

application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C.

§ 1915(a) and order the Clerk of the Court to file the Amended

Complaint.

      At this time, the Court must review the Amended Complaint to

determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.  BACKGROUND

On September 25, 2002, Plaintiff Ronald Jones, an inmate at Northern State Prison, filed a complaint pursuant to 42 U.S.C. § 1983 raising claims that certain prison officials had violated his constitutional rights with respect to the opening of incoming legal mail (the "Legal Mail Policy Action").  See Jones v. Brown, Civil No. 02-3045 (D.N.J.).  On October 22, 2003, this Court issued a memorandum opinion and order denying Plaintiff's request for injunctive relief and granting summary judgment in favor of defendants on the damages claims.  On September 15, 2006, the U.S. Court of Appeals for the Third Circuit issued its opinion affirming this Court's judgment in most respects, but directing this Court to enter an order for injunctive relief, which this Court thereafter did.  See Jones v. Brown, 461 F.3d 353 (3d Cir. August 24, 2006), cert. denied, 549 U.S. 1286 (March 19, 2007).

In December 2008, Plaintiff filed a motion to enforce that injunction.  In May 2009, this Court entered its Memorandum Opinion and Order denying the motion, insofar as it asserted that the defendants had failed to comply with the injunction, and further severing certain other newly-asserted claims, directing the opening of new actions for the pursuit of those claims, and

granting Plaintiff leave to file amended complaints with respect to those newly-asserted claims.

This action is the civil action opened for Plaintiff to pursue his claims of retaliation for his filing of the Legal Mail Policy Action.  In December 2009, Plaintiff filed his Amended Complaint.

In the rambling 180-paragraph Amended Complaint, Plaintiff alleges that twenty-four separate defendants have violated his constitutional rights.[1]  Rather than limiting himself to the retaliation claim with respect to which this matter was opened, Plaintiff has asserted a myriad of claims.  In his "Preliminary Statement," he groups his claims into the following general categories:  (1) that unidentified Northern State Prison officials "conspired" in denying Plaintiff access to the prison law library, (2) that unidentified Northern State Prison officials "conspired" in retaliating against him for filing the Legal Mail Policy Action, (3) that unidentified Northern State Prison officials "conspired" in denying Plaintiff medical care, and (4) that unidentified Northern State Prison officials "conspired" in subjecting Plaintiff to unconstitutional

---

[1] The named defendants M. Brown, S. Sootkoos, and Roy Hendricks were named as defendants in the Legal Mail Policy Action, but are not named as defendants in the Amended Complaint. Accordingly, they will be dismissed from this action.  In addition, it appears from the text of the Amended Complaint that defendants "Doctor E" and "R. Enukashnill" are the same person.

conditions of confinement.  Following this Preliminary Statement, Plaintiff continues with numerous factual and legal allegations which this Court will address individually, _infra_.

To summarize, Plaintiff's factual allegations include: (1) alleged failure to provide medical care for (a) a knee injury requiring surgery, (b) for breathing problems and migraine headaches arising from being double-celled with a smoker, (c) for back and shoulder pain from a fall while descending an upper bunk, and (d) alleged failure to provide prescribed treatments, including prescriptions, a lower-tier cell, and a lower bunk, (2) alleged improper cell searches and strip searches, (3) alleged refusal to transfer Plaintiff to another prison, (4) alleged refusal to give Plaintiff certain prison jobs, (5) alleged inadequate access to the law library, (6) alleged unconstitutional conditions of confinement, (7) alleged refusal to send legal mail on two occasions, (8) alleged deprivations of property, specifically, failure to credit him with state pay on two occasions, and damage to eyeglasses and a typewriter during a cell search, (9) alleged verbal threats and cursing, and (10) alleged failure to respond to grievances.

Plaintiff seeks declaratory and injunctive relief, and compensatory and punitive damages.

4

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the <u>Twombly</u> pleading standard applies outside the § 1 antitrust context in which it was decided.  See <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to
the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when
assessing the sufficiency of any civil complaint, a court must
distinguish factual contentions -- which allege behavior on the
part of the defendant that, if true, would satisfy one or more
elements of the claim asserted -- and "[t]hreadbare recitals of
the elements of a cause of action, supported by mere conclusory
statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).
Although the Court must assume the veracity of the facts asserted
in the complaint, it is "not bound to accept as true a legal
conclusion couched as a factual allegation."  Id. at 1950.  Thus,
"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  Id.

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  See Phillips, 515 F.3d
> at 234-35.  As the Supreme Court instructed in Iqbal,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

> Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ...  If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34

(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane

v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg

County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his constitutional rights.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

1994).

### IV.  ANALYSIS

As noted above, Plaintiff names twenty-four individual

defendants.  Joinder of Plaintiff's claims against all of these

defendants does not accord with the requirements of the Federal

Rules of Civil Procedure.

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants
> if:
>     (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; and
>     (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a),
> plaintiff may join multiple defendants in a single
> action only if plaintiff asserts at least one claim to
> relief against each of them that arises out of the same
> transaction or occurrence and presents questions of law
> or fact common to all.  If the requirements for joinder
> of parties have been satisfied, however, Rule 18 may be
> invoked independently to permit plaintiff to join as
> many other claims as plaintiff has against the multiple
> defendants or any combination of them, even though the
> additional claims do not involve common questions of
> law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002).  However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit.  See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground for dismissing an entire action.  Instead, a court faced with a complaint improperly joining parties "may at any time, on just terms, add or drop a party.  The court may also sever any claims against a party."

Here, Plaintiff has asserted a myriad of claims against twenty-four separate defendants.  He has failed to meet the requirements for joining claims against these defendants as, with the exception of the vague and deficient "conspiracy" allegations, he has failed to assert any single claim against all defendants.  With respect to the so-called "conspiracy" claims, the conclusory allegations of "conspiracy" are not sufficient to state any claim against all defendants.

In this regard, the Supreme Court has demonstrated the application of the general Rule 8 pleading general standards to a Sherman Act conspiracy claim.

11

In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ...  It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.  Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief."  A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965-66 (2007)

(citations and footnotes omitted).  As noted above, the Court of

Appeals for the Third Circuit has held, in the context of a

§ 1983 civil rights action, that the Twombly pleading standard is

not limited to the antitrust context in which it was decided.

See <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008).

Despite the length and detail of the Amended Complaint, Plaintiff has failed to allege any <u>facts</u> suggesting a meeting of the minds amongst all the defendants.  Indeed, in a complaint in which the factual allegations span more than two years, involving defendants who work in different physical locations with widely divergent responsibilities and interactions with Plaintiff, he has not even pleaded "parallel conduct."  The rambling allegations against these twenty-four defendants are plainly insufficient to satisfy the "conspiracy" pleading requirements and are similarly insufficient to sustain a joint complaint. Accordingly, this Court must determine on what terms it would be just, pursuant to Rule 21, to sever or dismiss any claims or parties.

A.   <u>Retaliation Claim</u>

As Plaintiff was granted leave to file an amended complaint with respect to his "retaliation" claim, this Court will begin with that issue.

Although Plaintiff alleges a general pattern of retaliation for his institution of the Legal Mail Policy Action, he alleges only that one particular event, Defendant Sergeant Nocolai's searching of his cell on July 29, 2007, leaving his personal possessions in a mess, was undertaken in retaliation for his

having written grievances about the failure to move him out of a cell with a smoker.

To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. <u>Rauser v. Horn</u>, 2001 WL 185120 (3d Cir. 2001) (quoting <u>Allah</u>, 229 F.3d at 225). <u>See also Anderson v. Davila</u>, 125 F.3d 148, 160 (3d Cir. 1997) (citing <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274 (1977)); <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 386-99 (6th Cir. 1999), <u>cited with approval in Allah</u>, 229 F.3d at 225.

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) (quotation omitted); <u>see also United States Dep't of Transp., ex rel. Arnold v. CMC Eng'g</u>, 564 F.3d 673, 676 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.Ct. at 1949. Thus, to state a claim for retaliation, a plaintiff must allege "'a chronology of

14

events from which retaliation may be inferred.'" <u>Bendy v. Ocean</u>
<u>County Jail,</u> 341 Fed.Appx. 799, 801-02 (3d Cir. 2009) (citation
omitted).

Here, Plaintiff has failed to allege facts establishing a
chronology of events from which retaliation may be inferred.
While he has alleged that various defendants took certain actions
in violation of his constitutional rights, he has failed to
allege any facts from which retaliation could be inferred.  The
events complained of took place over a period of more than two
years, involve persons who had no connection to the Legal Mail
Policy Action, and nowhere suggest that they were inspired by the
Legal Mail Policy Action.  Similarly, with respect to the one
cell search which Plaintiff alleges was undertaken in retaliation
for his having filed grievances about his cell assignment,
Plaintiff again fails to allege a chronology of events from which
retaliation could be inferred.  Moreover, the retaliation alleged
- leaving his possessions in a mess - does not appear to be of
the type sufficient to deter a person of ordinary firmness from
exercising his rights.  Certainly, it is apparent from the
factual allegations of the Amended Complaint, they were not
sufficient to deter Plaintiff from exercising his rights.
Accordingly, the retaliation claim will be dismissed for failure
to state a claim.

B.   <u>Claim of Denial of Medical Care</u>

Plaintiff alleges that he suffers from a serious knee injury requiring surgery and pain management.  In addition, he alleges that he has suffered and continues to suffer breathing difficulties and migraine headaches from being double-celled with smokers.  Finally, he alleges shoulder and back pain from a fall. Plaintiff alleges that prison officials have failed to provide treatment for all of these health problems.

Plaintiff alleges that Defendant Dr. Hochberg determined that the cartilage in his knee was gone and that he would require further treatment, including possible surgery and cortisone shots, but has never followed up in accordance with his own recommendations.  Plaintiff alleges that he had a prescription for a lower-tier, lower-bunk cell assignment, but that unnamed prison officials have refused to comply with that prescription. Plaintiff alleges that Defendant Warden Lydell Sherrer has refused to provide Plaintiff copies of his medical records, so that he could obtain outside review and possible treatment. Plaintiff also alleges that Defendant Warden Sherrer is aware that other prison officials are not complying with the lower-tier, lower-bunk prescription, but has failed to take any corrective action.

Plaintiff alleges that he has experienced breathing difficulties and migraines from being double celled with a heavy

16

smoker.  Plaintiff alleges that Defendant Assistant Warden Eric
Stokes delayed sending Plaintiff for medical evaluation for a
period from May 31 to July 5, 2007.  Plaintiff also alleges that
he did not receive his medication until July 30, but he fails to
allege who withheld the medication.  Again in July 2009,
Plaintiff saw Defendant Dr. S. Perera about his continuing knee
problems as well as migraines and nausea from second-hand smoke.
Again, Plaintiff was issued a prescription for a lower-tier cell
and was prescribed pills for pain and migraines.  Plaintiff
alleges that he still was not receiving those prescriptions by
September 2009.  Plaintiff alleges that Defendants Eric Stokes
and G. White responded to Plaintiff's grievance about not getting
his medication with a statement that Plaintiff had only five days
after medications are prescribed to notify officials that he is
not receiving the medication.

     Plaintiff alleges that in August 2009, Defendant Reynolds, a
guard, refused to move him to a lower-tier, lower-bunk cell
assignment, in accordance with his prescription.  Later,
Plaintiff fell, injuring his back and shoulder.  Then, he was
moved to a lower-tier cell.  In October 2009, Plaintiff was seen
by Defendant Dr. Enukashnill about his back and shoulder
injuries.  On October 12, x-rays were taken, but Plaintiff
alleges that he has never been able to learn the results, nor was
any follow-up treatment undertaken.  Plaintiff alleges that he

stopped getting prescribed painkillers by November 1, 2009, and that Defendant Stokes responded that no painkillers were prescribed, which Plaintiff disputes.  Plaintiff alleges that on November 12 he saw Dr. Denise Johnson, not a defendant here, who told him that no x-ray results were on the computer, but she ordered painkillers again, which he received on November 17.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9

18

(1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).

The second element of the <u>Estelle</u> test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  <u>Andrews v. Camden County</u>, 95 F.Supp.2d 217, 228 (D.N.J. 2000); <u>Peterson v. Davis</u>, 551 F.Supp. 137, 145 (D. Md. 1982), <u>aff'd</u>, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in

fact, been made." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ...  Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment."  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out."  Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in

20

interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted). Compare Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment properly granted to prison warden and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions) with Sprull v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (a non-physician supervisor may be liable under § 1983 if he knew or had reason to know of inadequate medical care).

Plaintiff's allegations are sufficient to permit Eighth Amendment claims for the denial of medical care to proceed beyond this screening stage as against Defendants Dr. Hochberg, Lydell Sherrer, Eric Stokes, G. White, the guard Reynolds, Dr. S. Perera and Dr. Enukashnill.

C.    Transfer/Job Requests

Plaintiff alleges that various prison officials ignored or denied his requests for transfer to another prison and for assignments to particular prison jobs.  The Court construes these allegations as an attempt to state a claim for deprivation of liberty or property interests without due process.

A liberty or property interest protected by the Due Process Clause may arise from either of two sources: from the Due Process Clause itself or from statute or regulation.  See Hewitt v.

Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of
Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s
long as the conditions or degree of confinement to which the
prisoner is subjected is within the sentence imposed upon him and
is not otherwise violative of the Constitution, the Due Process
Clause does not in itself subject an inmate's treatment by prison
authorities to judicial oversight." Montanye v. Haymes, 427 U.S.
236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v.
Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494
U.S. 210, 221-22 (1990)(prisoner has liberty interest under the
Due Process Clause in freedom from involuntary administration of
psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94
(1980)(prisoner has liberty interest under the Due Process Clause
in freedom from involuntary transfer to state mental hospital
coupled with mandatory treatment for mental illness, a punishment
carrying "stigmatizing consequences" and "qualitatively
different" from punishment characteristically suffered by one
convicted of a crime).

Governments, however, by statute or regulation, may confer
on prisoners liberty interests that are protected by the Due
Process Clause. "But these interests will be generally limited
to freedom from restraint which, while not exceeding the sentence
in such an unexpected manner as to give rise to protection by the

22

Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest).

None of the losses enumerated by Plaintiff rises to the level of an "atypical and significant hardship ... in relation to the ordinary incidents of prison life," and, thus, even if they violate regulations guiding prison administration, none gives rise to procedural due process concerns.

More specifically, an inmate has no liberty or property interest in a particular prison job, or any prison job. <u>See James v. Quinlan</u>, 866 F.2d 627, 629-30 (3d Cir.), <u>cert. denied</u>, 493 U.S. 870 (1989); <u>Bryan v. Werner</u>, 516 F.2d 233, 240 (3d Cir. 1975). Nor does a prisoner have a liberty interest in a particular housing assignment within a prison system. <u>See McKune v. Lile</u>, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); <u>Hewitt v. Helms</u>, 459 U.S. 460 (no liberty interest in remaining in general population rather than administrative segregation); <u>Asquith</u>, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and

significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest); Barr v. DiGuglielmo, 2008 WL 2786424 (E.D. Pa. 2008) (no liberty interest in being housed in particular wing of prison).  But see Wilkinson v. Austin, 545 U.S. 209 (2005) (Ohio prisoners have state-created liberty interest in avoiding assignment to "supermax" prison).

Thus, Plaintiff's due process claim based upon the alleged denial of his requests for transfer and for a prison job will be dismissed with prejudice.

D.   Access to Law Library

Plaintiff alleges that on various occasions he was made to wait or to file a grievance before being granted access to the law library.  In addition, he alleges that he did not receive as much access to the law library as he requested.  He alleges that he sought access to the law library to pursue litigation challenging his conviction, the denial of parole, and alleged civil rights claims related to his incarceration.  Finally, Plaintiff alleges that on two occasions his outgoing legal mail was delayed or not sent at all.  Plaintiff does not further describe the nature of the legal mail involved.  The Court construes all of these allegations as an attempt to state a claim for denial of the constitutional right of access to the courts.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government

for redress of grievances.  Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of

conviction and incarceration."  <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).

There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.  ...  [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim.  He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint."  <u>Lewis</u>, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them.  ...  This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide

26

meaningful access.  But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying.  [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

Thus, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury."  See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, Plaintiff has failed to show that the alleged inadequate access to the law library, or the alleged denial or delay in sending his legal mail, caused him past or imminent actual injury.  He has failed to allege that he was not able to file any non-frivolous civil rights complaints or that he was unable to pursue any non-frivolous challenges to his conviction or denial of parole.  The mere fact that Plaintiff would have preferred to spend more time in the law library is not sufficient to state a claim.  Accordingly, he has failed to state a claim for denial of access to the courts.  This claim will be dismissed with prejudice.

E.   Deprivation of Property

Plaintiff alleges that, as a result of a cell search in June 2007, his typewriter and eyeglasses were damaged.  He further alleges that he filed a property damage claim and that Defendant Warden Larry Glover advised him that the claim had been referred for investigation.  In January 2009, Plaintiff received notification from Defendant Executive Assistant Mario Viera that the claim was denied for inadequate documentation.

In addition, Plaintiff alleges that in June 2007 he did not get his state pay, that it was paid out in August 2007 after review, but that the payment was too small because so much was taken for his debts that less than the state-mandated $15 was left in the account for use in making commissary purchases. Plaintiff alleges that Defendants Assistant Warden Eric Stokes and Business Office Manager Bruce Brooks were responsible for this error.

Plaintiff also alleges that his March 2009 state pay was not credited to his institutional account.  Again, Plaintiff alleges that Defendants Assistant Warden Eric Stokes and Business Office Manager Bruce Brooks were responsible for this error.  Plaintiff wrote a letter to Defendant Department of Corrections Commissioner George Hayman, and Defendant DOC Director of Operations R. Paterson responded to Plaintiff that he should get his pay soon.  Plaintiff sent another letter to Commissioner

Hayman, and again Defendant Paterson responded that such issues
must be resolved through the prison business office.  Plaintiff
does not state whether he ever received his March 2009 pay or
whether he pursued institutional grievance procedures or any
other remedies.

The Court construes these allegations as an attempt to state
a claim for deprivation of property without due process, in
violation of the Fourteenth Amendment.

An unauthorized deprivation of property by a government
actor, whether intentional or negligent, does not constitute a
violation of the procedural requirements of the Due Process
Clause of the Fifth Amendment if a meaningful post-deprivation
remedy for the loss is available.  Hudson v. Palmer, 468 U.S.
517, 530-36 (1984) (decided under Due Process Clause of
Fourteenth Amendment); Parratt v. Taylor, 451 U.S. 527, 543-44
(1981) (same), overruled in part on other grounds, Daniels v.
Williams, 474 U.S. 327, 328 (1986).  The institutional grievance
procedure provides just such an adequate post-deprivation remedy,
even if Plaintiff's personal property was confiscated pursuant to
an established policy.  See, e.g., Barr v. Knauer, 321 Fed.Appx.
101 (3d Cir. April 10, 2009) (approving post-deprivation
grievance remedy following confiscation of electric razor);
Tillman v. Lebanon County Corr. Fac., 221 F.3d 410, 422 (3d Cir.
2000) (prison grievance procedure satisfies procedural due

29

process concerns where state must take quick action or where it is impractical to provide meaningful predeprivation process). The existence of the institutional post-deprivation grievance remedy forecloses any due process claim, even if an inmate is dissatisfied with the result of the process. Iseley v. Horn, 1996 WL 510090, at *6 (E.D. Pa. Sept. 3, 1996). Moreover, New Jersey provides a judicial post-deprivation remedy for unauthorized deprivation of property by public employees. See New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1 et seq. (2001). Plaintiff has failed to state a claim for deprivation of personal property without due process. This claim will be dismissed with prejudice.

F.   Failure to Respond to Grievances

     Plaintiff alleges repeatedly that he sent a letter or a grievance form to corrections officials who either failed to investigate or respond or who responded in a manner Plaintiff deems inadequate.

     "'[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.'" Graw v. Fantasky, 68 Fed.Appx. 378, 2003 WL 21523251 (3d Cir. 2003) (unpubl.) (quoting unpubl. District Court opinion) (citing DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989)). Cf. Burnside v. Moser, 138 Fed.Appx. 414, 416, 2005 WL 1532429 (3d Cir. 2005)

(prisoners do not have a constitutionally protected right to a
prison grievance process); Lewis v. Williams, 2006 WL 538546, *7
(D. Del. 2006) (failure to investigate a grievance does not raise
a constitutional issue) (collecting cases).  Compare Durmer v.
O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment
properly granted to prison warden and state commissioner of
corrections, the only allegation against whom was that they
failed to respond to letters from prisoner complaining of prison
doctor's treatment decisions).

Accordingly, the claims for failure to investigate or
respond to grievances will be dismissed with prejudice.

G.   Alleged Verbal Harassment

Plaintiff alleges that unit guard Johnson, not a defendant
here, on one occasion, refused him a shower and cursed at him.
Plaintiff alleges that Defendant Assistant Warden Stokes
responded to Plaintiff's grievance by stating that there was no
evidence of misconduct by the unit guard.  In addition, Plaintiff
alleges that Defendant Captain Hernandez yelled at him about his
grievances and verbally threatened him.  The Court construes
these allegations as an attempt to state a claim for harassment
in violation of the Eighth Amendment.

As the United States Supreme Court has stated,
"[i]ntentional harassment of even the most hardened criminals
cannot be tolerated by a civilized society."  Hudson v. Palmer,

31

468 U.S. 517, 528 (1984).  The Eighth Amendment protects prisoners against calculated harassment.  Id. at 530.  Generally, however, mere verbal harassment does not give rise to a constitutional violation.  See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)(taunts and threats are not an Eighth Amendment violation);  Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987) (vulgar language); Rivera v. Goord, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185 (D.N.J. 1993); Murray v. Woodburn, 809 F. Supp. 383 (E.D. Pa. 1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988).  Racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983.  See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997)(verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz v. Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999) ("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); Haussman v. Fergus, 894 F. Supp. 142, 149 (S.D.N.Y. 1995); Prisoners' Legal Association, 822 F. Supp. at 187-189 & n.3 (corrections officer's use of racial slurs did not amount to constitutional violation);

Wright v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y. 1989), aff'd, 891 F.2d 278 (2d Cir. 1989); Knop v. Johnson, 667 F. Supp. 467 (W.D. Mich. 1987), appeal dismissed, 841 F.2d 1126 (6th Cir. 1988).

Here, Plaintiff's allegations of verbal threats are not sufficient to state a claim for harassment under the Eighth Amendment.  Accordingly, these claims will be dismissed with prejudice.

H.   All Remaining Claims

Plaintiff also alleges facts which this Court construes as attempts to raise claims, among others, for improper cell searches, strip searches, or pat-down searches, and for unconstitutional conditions of confinement.  In several instances, he fails to identify the alleged wrongdoer(s).  In any event, none of these claims is properly joined in this action and all remaining claims not discussed specifically above will be dismissed without prejudice.  Plaintiff may not file another amended complaint in this action to assert these claims, but must assert each of these claims, if he wishes to pursue them, in a new and separate action which conforms to pleading requirements of the Federal Rules of Civil Procedure, including the rules related to joinder of claims and parties.

V.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's claim under the Eighth Amendment for refusal to provide adequate medical care may proceed as against Dr. Hochberg, Dr. S. Perera, Dr. Enukashnill, Lydell Sherrer, Eric Stokes, G. White, and the guard Reynolds. All other claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim.  An appropriate order follows.


                                     /s/ Garrett E Brown, Jr.
                                     Garrett E. Brown, Jr.
                                     Chief Judge
                                     United States District Court

Dated: June 7, 2010

34